UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

In re:

AMY KALT, Debtor.

Chapter 7

Case No. 24-22518.

---

## CERTIFICATION OF CLEMENT LEUNG
## IN OPPOSITION TO THE CERTIFICATION OF AMY KALT

I, **Clement Leung**, of full age, hereby certify and state as follows in opposition to the Certification submitted by Amy Kalt, and in support thereof state the following based upon my personal knowledge and review of records maintained in the ordinary course of business.

### I. PARTIES AND BASIS OF CERTIFICATION

1. I am the managing member of 30Mething, LLC, the owner and landlord of the residential condominium unit known as Unit 14N, 770 Anderson Avenue, Cliffside Park, New Jersey (the "Unit").

2. I submit this Certification in opposition to the Certification of Amy Kalt, which alleges that I violated the automatic stay, unlawfully evicted the tenants, or otherwise acted in bad faith.

3. I make this Certification based upon my personal knowledge and review of records maintained in the ordinary course of business. If called as a witness, I could and would testify competently to the facts stated herein.

### II. FIRE INCIDENT AND TENANTS' VACATUR

4. On or about September 8, 2024, a fire occurred in the Unit, rendering it unsafe and uninhabitable.

5. Beginning September 9, 2024, the tenants vacated the Unit with all of their personal belongings and relocated to a hotel paid for entirely by their own insurance carrier. The tenants did not reside in, sleep in, or occupy the Unit at any time thereafter until April 2025. (See Exhibit A).

6. From September 2024 through March 2025, the Unit remained vacant, and the tenants' housing needs were fully met by insurance-provided accommodations. (See Exhibit A).

### III. EXTENSIVE REPAIRS AND MANAGEMENT CONTROL

7. Following the fire, the Unit required extensive reconstruction, including demolition and rebuilding of fire-damaged walls; installation of new flooring throughout; full interior painting and professional

remediation; restoration of HVAC and electrical systems; ordering and installation of new windows and a sliding glass door manufactured in California; and repeated inspections by condominium management.

8. Balcony railings and related work could not be completed until ambient temperatures exceeded 60 degrees Fahrenheit, as required by building management and contractors.

9. During this period, the Unit was not approved for occupancy by condominium management. (See Exhibits B and C).

### IV. LEASE TERMINATION NOTICE — NOT AN EVICTION

10. On February 28, 2025, my attorney issued a Notice of Lease Termination pursuant to the lease's fire-damage and casualty provisions, as repairs had exceeded ninety (90) days. (See Exhibit D).

11. This Notice was not an eviction notice, was not filed with any court, did not demand possession, did not involve a lockout or self-help, and was based solely on the uninhabitability of the Unit.

### V. BANKRUPTCY NOTICE AND IMMEDIATE COMPLIANCE

12. On March 7, 2025, counsel for Ms. Kalt asserted that the February 28 Notice violated the automatic stay. (See Exhibit E).

13. On March 11, 2025, my counsel, Jordan D. Yuelys, Esq., responded immediately confirming that the termination would not be effectuated and that the parties would be notified once repairs were complete. (See Exhibit F).

14. After March 11, 2025, no further action was taken.

### VI. MARCH 12, 2025 INCIDENT — NO LOCKOUT OR EVICTION

15. On March 12, 2025, the tenants attempted to move their belongings back into the Unit while major construction was still ongoing and safety conditions were not met.

16. Entry was discouraged solely for safety and liability reasons, as repairs would not be completed until approximately the first week of April 2025.

17. The tenants—not I—contacted the Cliffside Park Police Department.

18. The police report confirms no eviction, lockout, trespass warning, or arrest occurred. (See Exhibit G).

### VII. LEASE RIDER AND RETURN TO OCCUPANCY

19. In April 2025, the parties executed a Lease Rider acknowledging remaining balcony work and safety restrictions. (See Exhibit H).

20. The tenants voluntarily returned to the Unit thereafter. (See Exhibit I).

### VIII. LEASE RENEWAL — CONCLUSIVE PROOF OF NO EVICTION INTENT

21. In July 2025, after repairs were completed, the tenants requested and executed a one-year lease renewal. (See Exhibit J).

## IX. NO DAMAGES AND NO STAY VIOLATION

22. Renewal of the lease conclusively demonstrates that I never intended to evict or dispossess the tenants.

23. The tenants suffered no actual damages as a result of my actions.

24. At no time did I willfully violate the automatic stay or act in bad faith.

## X. CONCLUSION

25. The allegations set forth in the Certification of Amy Kalt inaccurately characterize a fire-related casualty and reconstruction process as an eviction or violation of the automatic stay, while omitting material facts demonstrating my good-faith conduct, immediate compliance upon notice, and the tenants' voluntary return to and renewal of the tenancy.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: 01/05/2026

**Clement Leung**